IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:**<br><br>**ERNEST H. FREISE, SR.**<br>**and SERAPHINE M. FREISE**<br><br>           Debtors. | **CIVIL ACTION NO.  16-cv-4505** |
| **TRANSAMERICA LIFE INSURNACE COMPANY**<br>                           Appellant,<br>     vs.<br><br>**CHRISTINE C. SHUBERT, Chapter 7 Trustee for the Estate of Ernest H. Freise, Sr. and Seraphine M. Freise**<br><br>                           Appellee. | |

Baylson, J.                                                                                                          November 15, 2016

**MEMORANDUM RE: APPELLE'S MOTION TO DISMISS APPEAL OF BANKRUPTCY COURT'S ORDER**

**I.   Introduction**

Transamerica Life Insurance Company ("Appellant" or "Transamerica") has appealed the Bankruptcy Court's Order granting the motion of Christine C. Shubert, Chapter 7 Trustee for the estate of Ernest H. Freise, Sr. and Seraphine M. Freise ("Trustee," and collectively, the "Debtors") to assume and assign a life insurance contract (the "Insurance Contract") to James Torchia, pursuant to 11 U.S.C. § 365 of the Bankruptcy Code.[1]  The Appeal raises two key questions:

---

[1]     Section 365 provides, in relevant part:

(1) Whether the Insurance Contract was executory on April 7, 2015, the time that Debtors filed their Chapter 13 bankruptcy petition (the "Chapter 13 Petition Date"); and

(2) Whether the Insurance Contract—though executory on the Chapter 13 Petition Date—lost its executory status by April 25, 2016, the time Debtors filed their motion to assume and assign the Insurance Contract (the "Motion to Assign"), pursuant to Section 365.

If the Court holds that the Insurance Contract was not executory at the time Debtors filed the Motion to Assign, it must also hold that the Bankruptcy Court erred in granting the Motion to Assign, because only executory contracts can be assigned pursuant to Section 365 of the Bankruptcy Code. See In re Riodizio, Inc., 204 B.R. 417, 422 (Bankr. S.D.N.Y. 1997).

On August 24, 2016, Debtors filed a motion to dismiss Transamerica's Appeal (ECF 2, Debtors' Mot. Dismiss Appeal "Debtors' Mot." or "Motion to Dismiss"), to which Transamerica filed its opposition on August 31, 2016 (ECF 6, Transamerica Opp'n to Debtors' Mot. Dismiss Appeal "Trans. Opp'n").

---

**(a)** Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

**(b)(1)** If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

**(A)** cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

**(B)** compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

**(C)** provides adequate assurance of future performance under such contract or lease.

Because the Insurance Contract was executory at the time of Debtors' Motion to Assign, the Court finds that the Bankruptcy Court did not err in granting Debtors' Motion to Assign, pursuant to Section 365.  Accordingly, Debtors' motion to dismiss Transamerica's Appeal will be **GRANTED.**

## II. Background

### A. Factual Background

The facts in this case are largely not in dispute, and are set forth in a Stipulation (ECF 4, Ex. B, "Stip."), jointly submitted by the parties to the Bankruptcy Court on July 12, 2016.

In April 2002, Debtors purchased the Insurance Contract originally issued by Transamerica for $100,000.  (Stip. ¶ 6).  The Insurance Contract had a no-lapse guarantee provision known as the Assured Coverage Endorsement ("ACE"), which guaranteed that the Insurance Contract would remain active as long as the specified ACE premium of $8,895.19 was paid on or before its due date each year.  (Id. ¶ 9-10).  Debtors stopped making all payments—including both normal monthly payments and ACE premium payments—as of September 2014, which caused the Insurance Contract to become underfunded.  (Id. ¶ 13).  On February 15, 2015, Transamerica sent Debtors a letter indicating that the Insurance Contract had entered the "grace period," and that the Insurance Contract would lapse unless they made certain payments by April 15, 2015.  (Id. ¶ 14).  If the Insurance Contract lapsed, there was a mechanism by which it could be reinstated, which Debtors did not utilize.  (Trans. Opp'n at 5).

On April 7, 2015—one week before the Insurance Contract would lapse according to its terms—Debtors filed for protection under Chapter 13 of the Bankruptcy Code.  (Id. ¶ 1).  On April 21, 2015, Debtors submitted a plan (the "Plan") in which they specifically sought to assume the Insurance Contract and cure any arrears.  (Id. ¶ 18; Bankr. Dkt. No. 11).  The Plan

was never confirmed by the Bankruptcy Court. (Id. ¶ 24). On October 28, 2015, the Bankruptcy Court converted Debtors' case from Chapter 13 to Chapter 7. (Id. ¶ 23).

On December 18, 2015, Debtors filed a motion to extend the time within which the Trustee could assume, assign or reject the Insurance Contract, which the Bankruptcy Court granted, extending the deadline for Debtors to assume or reject the Insurance Contract to April 25, 2016. (Id. ¶¶ 26-28).

On April 25, 2016—the deadline set by the Bankruptcy Court—the Trustee filed the Motion to Assign, pursuant to Section 365. (Id. ¶ 35). On May 25, 2016, the Trustee filed with the Bankruptcy Court its agreement to assume and assign the Insurance Contract to James Torchia (the "Agreement"). (Id. ¶ 37). On May 31, 2016, and again on June 10, 2016, Transamerica filed objections to Debtors' motion because, *inter alia*, Mr. Torchia was a defendant in a lawsuit brought by the SEC alleging securities fraud and the operation of a Ponzi scheme involving life insurance policies. (Id. ¶ 38; Bankr. Dkt. No. 65). On June 27, 2016, the Trustee filed an amended assignment agreement (the "Amended Agreement"), which contemplated assuming and assigning the Insurance Contract to Stephanie Segarra, James Torchia's wife, instead of to James Torchia. (Id. ¶ 39). Debtors and Ms. Segarra closed on the Amended Agreement on August 23, 2016.

### B. Bankruptcy Court Proceedings

On August 4, 2016, after a hearing, the Bankruptcy Court issued an Order granting Debtors' Motion to Assign. The Order was based primarily on the following findings:

(1) The Insurance Contract was executory as of the Chapter 13 Petition Date because (1) in Counties Contracting and Construc. Co. v. Constitution Life Insur. Co, 855 F.2d 1054, 1060 (3d Cir. 1988), the Third Circuit expressed an "inclination" that insurance policies are executory contracts; and (2) the test for executoriness had been satisfied as of the Chapter 13 Petition Date because "performance obligations by both parties were exant on the date of bankruptcy." (Bankr. Order at 2).

4

(2) The Insurance Contract did not lose its executory status prior to Debtors' motion to assume and assign it,[2] and therefore Debtors were entitled to avail themselves of the mechanisms of Section 365.

(3) Debtors had complied with the requirements of 11 U.S.C. § 365(b)(1), which sets forth the conditions with which Debtor needed to comply before assuming and assigning the Insurance Contract, since there had been a default under the Insurance Contract.  (See *supra*, I n.1).

The same date that the Bankruptcy Court granted the Motion to Assign, Transamerica filed a motion to stay the Bankruptcy Court's Order pending the instant Appeal, pursuant to Bankruptcy Rule 8007(a), which the Bankruptcy Court denied on September 21, 2016. (Debtors' Supp. Br. at 2).

### C. District Court Proceedings

On August 26, 2016, in addition to the instant Appeal, Transamerica also moved this Court to stay Bankruptcy Court proceedings pending the outcome of the Appeal, (ECF 3, "Trans. Stay Mot."), to which Debtors filed an objection on September 8, 2016.  (ECF 7, "Debtors' Opp'n Stay Mot.").

---

[2]   The Bankruptcy Court found that the Insurance Contract remained executory up to and including the date of Debtors' Motion to Assume by operation of several provisions of the Bankruptcy Code, including:

(1) 11 U.S.C. § 108(b), which automatically extended the time by which Debtors could "cure [their] default" by 60 days from the date of the Chapter 13 Petition Date, to June 6, 2016;
(2) 11 U.S.C. § 365(d)(2),which allowed Debtors to assume or reject the Insurance Contract "at any time before the confirmation of a plan," which it never was (Stip. ¶ 24);
(3) 11 U.S.C. § 365(d)(1), which extended the time by which Debtors had to move to assume and assign the Insurance Contract to December 28, 2015, 60 days after the date that the Bankruptcy was converted from Chapter 13 to Chapter 7; and
(4) 11 U.S.C. § 365(d)(1), which, upon Debtors' motion, dated December 18, 2015, further extended the time by which Debtors had to move to assume and assign the Insurance Contract.  In granting the motion, the Bankruptcy Court set the deadline for April 25, 2016, the date Debtors ultimately filed the Motion to Assign.  (Stip. ¶¶ 26-28).

5

On September 14, 2016, Transamerica requested the Court to hold oral argument regarding the Appeal (ECF 12), and in a letter, dated September 22, 2016, requested the Court to expedite the date of oral argument (ECF 16). By telephonic conference on September 27, 2016, the Court set a hearing regarding both the Appeal and the motion to stay for October 17, 2016. (ECF 18, 19).

At the October 17, 2016 hearing, the Court ruled that Debtors' Motion to Dismiss impermissibly argued that Transamerica's Appeal was statutorily moot, pursuant to 11 U.S.C. § 363,[3] since the challenged Motion to Assign was brought solely pursuant to 11 U.S.C. § 365.[4]

### III. Jurisdiction

District courts have jurisdiction over appeals from final orders in bankruptcy cases and over appeals from interlocutory orders with leave of court. 28 U.S.C. § 158(a). "In the bankruptcy context, finality is accorded a somewhat flexible, pragmatic definition." In re Taylor, 913 F.2d 102, 104 (3d Cir. 1990). Generally, a final order is one which finally resolves a discrete set of issues, leaving no related issues for later determination. Id.; Matter of West Electronics, Inc., 852 F.2d 79, 82 (3d Cir. 1988).

Orders approving assumption and assignments pursuant to § 365 are generally considered final orders. See In re Victoria Station Inc., 875 F.2d 1380, 1382 (9th Cir. 1989) (order approving assumption and assignment of unexpired lease is final order); In re Delaware &

---

[3] Section 363 of the Bankruptcy Code governs the post-petition sale of property of the bankruptcy estate and, "in order to promote certainty and finality in bankruptcy sales," Section 363(m) "prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay of the sale." Cinicola v. Scharffenberger, 248 F.3d 110, 121 (3d Cir. 2001).
[4] The parties were allowed to submit supplemental briefing regarding the merits of the Appeal. While Transamerica did so, Debtors' supplemental brief focused on their opposition to Transamerica's motion, dated August 26, 2016, to stay Bankruptcy proceedings pending the outcome of the instant Appeal (ECF 3). This memorandum is concerned with merits of the Appeal, and the motion to stay will accordingly be dismissed as moot.

Hudson Ry. Co., 129 B.R. 388, 393 (D. Del. 1991) (Bankruptcy Court's decision final because "[i]t conclusively determines that the contracts are executory and may be assumed and assigned by the Trustee."). Accordingly, the Bankruptcy Order is a final order, and this Court properly has jurisdiction over the Appeal.

### IV. Legal Standard

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal." In re Beers, 09-cv-01666, 2009 WL 4282270, at *3 (D.N.J. Nov.30, 2009) (quoting Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 157 (D.N.J. 2005). A district court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." In re United Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005).

The question of whether a contract is executory is a legal one. Accordingly, this Court's review is *de novo*. In re Midwest Portland Cement Co., 174 Fed. App'x 34, 35 (3d Cir. 2006).

### V. Analysis

Section 365 of the Bankruptcy Code authorizes a trustee to assume or reject executory contracts and unexpired leases, enabling "the trustee to maximize the value of the debtor's estate by assuming executory contracts . . . that benefit the estate and rejecting those that do not." In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3d Cir. 2000); see also 11 U.S.C. § 365(a) ("[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."). Once the trustee assumes an executory contract, Section 365 also authorizes assignment. Id. "To be subject to assumption or rejection, the statute, 11 U.S.C. § 365, expressly requires that the contract be executory." In re Riodizio, Inc., 204 B.R. at 422.

The Insurance Contract needed to be executory when Debtors filed their Motion to Assign, pursuant to Section 365, because Section 365 only governs executory contracts.

Therefore, as stated above, this Appeal raises two questions:

(3) Whether the Insurance Contract was executory as of the Chapter 13 Petition Date; and

(4) Whether the Insurance Contract—though executory on the Chapter 13 Petition Date—lost its executory status by the time Debtors filed the Motion to Assign.

The Court considers each question in turn.

**A. The Insurance Contract Was Executory on the Chapter 13 Petition Date**

Debtors argue, and the Bankruptcy Court found, that the Insurance Contract was "executory" as of the Chapter 13 Petition Date. (Bankr. Or. at 2). In support, Debtors echo the Bankruptcy Court's finding that "the Third Circuit has expressed in dicta an 'inclination' to find that an insurance policy is an executory contract and subsequent case law in the Third Circuit is in accord." (Debtors' Supp. Br. at 5).

Transamerica, for its part, argues that there is case law that "outwardly question[s] or express[es] doubt as to whether a life insurance policy is executory." (Trans. Supp. Br. at 10). In any event, it argues, in this context, the question of executoriness "places the cart before the horse in failing to address the threshold issue under contract law." (Trans. Supp. Br. at 10).

The Bankruptcy Code does not define the term "executory contract." The traditional test for determining if an agreement is an executory contract pursuant to Section 365 is the "Countryman" definition, which states that a contract is executory only where the obligations "of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of

8

the other." Countryman, Executory Contracts in Bankruptcy; Part I, 57 *Minn. L.Rev.* 439, 460 (1973).

The Third Circuit has adopted the Countryman definition. See, e.g., Sharon Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1989). The Third Circuit has emphasized that the Countryman test requires a court to determine whether the failure to perform an obligation under the contract would constitute a material breach. See, e.g., In re Columbia Gas System, Inc., 50 F.3d 233, 244 n. 20 (3d Cir. 1995). To determine this, courts look initially at the "four corners" of the Agreement. See In re Exide Techs., 378 B.R. 762, 766 (Bankr. D. Del. 2007).

While the Third Circuit has not definitively concluded that life insurance contracts are categorically executory in nature, it has expressed an "inclination" that they are. Counties, 855 F.2d at 1060. Since then, lower courts in the Third Circuit have also concluded that insurance contracts are executory in nature. See, e.g., In re Am. Med. Imaging Corp., 133 B.R. 45, 55 (Bankr. E.D. Pa. 1991) ("[T]he Sharon Steel definition of an executory contract is satisfied as to the Policy.").

Typically, courts examine whether a contract is executory as of the date that the bankruptcy petition is filed. See In re Columbia Gas Sys. Inc., 50 F.3d 233, 240 (3d Cir. 1995) ("The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed.").

Applied here, it is not disputed that, as of the Chapter 13 Petition Date, the Insurance Contract had entered a grace period, which had not yet expired by its terms. (Stip. ¶ 14). As the Bankruptcy Court found, the Countryman definition of executoriness was satisfied at that time because "performance obligations by both parties were exant on the date of bankruptcy."

9


(Bankr. Or. at 2). That is, Debtors' "obligation to pay premiums was still in effect" and "[Transamerica's] duty to pay in the event of a covered event remained." (Id.) The Court agrees with this analysis. The obligations that remained were obligations that, if not performed, would constitute a material breach. See Aetna Cas. & Sur. Co. v. Gamel, 45 B.R. 345, 348 (N.D.N.Y. 1984) ("[D]ebtor's failure to pay her September premium constituted a material breach.").

This conclusion is consistent with the weight of the case law in this Circuit, including both the Third Circuit's "inclination" in Counties, and subsequent lower court cases. [5] See In Re American Medical, 133 B.R. at 55 ("There is little doubt that, if the Policy was not . . . terminated as of [the bankruptcy petition date], it was a contract under which both parties were required to perform material obligations."). Accordingly, the Court holds that the Insurance Contract was executory on the Chapter 13 Petition Date.

### B. The Insurance Contract did not Lose its Executory Status Prior to the Motion to Assign

The question remains whether, even though the Insurance Contract was executory as of the Chapter 13 Petition Date, it lost its executory status prior to the Motion to Assign due to the fact that it had, by that time, expired according to its terms.

---

[5] The Court is not persuaded by the cases Transamerica cites to the contrary, none of which even support Transamerica's position. For instance, in In re Amatex Corp., the insurance contract at issue covered a term which ended several years prior to the debtor's bankruptcy filing. 107 B.R. 856, 861 n.3 (E.D. Pa. 1989), aff'd, 908 F.2d 961 (3d Cir. 1990). Importantly, while the court expressed "doubt" as to whether the insurance contract at issue was executory in that case, it simultaneously ordered the debtor to file a motion to assume the insurance contract pursuant to Section 365. Id. Similarly, in In re Botter, 261 B.R. 269, 273 (Bankr. D. Kan 2000), the court noted that it was "not certain" that certain provisions of an insurance contract were properly considered "separate executory contracts," as the parties had stipulated they were, but ultimately held that "[d]espite the uncertainty of the executory nature of these contracts, the Court will assume that the provisions at issue are in fact executory contracts and therefore governed by § 365[.]" Id.

As explained above, the typical time for determining executoriness for purposes of Section 365 is the date of a debtor's bankruptcy petition. "Sometimes, however, post-petition events alter the executoriness of a contract, as when a contract expires post-petition. In those circumstances, a court will look to the date the motion to assume or reject is made or heard rather than the petition date." In re Riodizio, 204 B.R. 417, 421 (Bankr. S.D.N.Y. Jan. 28, 1997); see also In re Penn Traffic Co., 524 F.3d 373, 381 (2d Cir. 2008) ("Some courts have . . . denied debtors' post-petition attempts to assume or reject contracts that were executory as of the petition date in light of post-petition events affecting those contracts.").

Transamerica relies heavily on two cases—Counties, 855 F.2d at 1054, and Aetna Cas. & Sur. Co. v. Gamel, 45 B.R. 345, 347 (N.Y.N.Y. 1984)—to support the argument that there were "post-petition events" that altered the executoriness of the Insurance Contract, and, accordingly, that the Bankruptcy Court erred in concluding that it was executory at the time of Debtors' Motion to Assign. True, each of those courts held that even though the relevant contract did not expire until after the bankruptcy petition date, the contract had lost its executory status by the time the debtor formally moved to assign it. However, these cases ultimately do not support Transamerica's position because here, unlike there, Debtors took a "mandatory" "affirmative act" to assume the contract after it lapsed but before they filed the Motion to Assign. Counties, 855 F.2d at 1054.

In Counties—the facts of which are admittedly analogous to those in the instant case—owners of an insurance policy failed to make payments necessary to prevent its lapse. There, as here, during the policy's built-in grace period, the owners filed for a voluntarily bankruptcy, thereby triggering an extension pursuant to 11 U.S.C. § 108(b). The Third Circuit explained that "during the 60-day extended grace period provided by § 108(b), the insurance contract was still

11

in effect," but that the debtor took no "affirmative act" to acquire the court's approval to accept the contract during that time, which was "mandated for effective assumption under [Section 365]." Id. The Third Circuit held that, "once the 60-day period expired *without any action being taken by Counties to assume the contract*, the contract expired. Once the contract is no longer in existence, the right to assume it is extinguished. A contract may not be assumed under § 365 if it has already expired according to its terms." Id. at 1061 (emphasis added).

While the Third Circuit did not specifically identify the *type* of "affirmative act" to assume the contract that would have been sufficient to prevent the post-petition evaluation of its executoriness, it did make clear that the requisite act was not necessarily a formal motion to assume the contract. In distinguishing Counties from Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir.), cert denied, 469 U.S. 982 (1984), the Court noted that the "affirmative act" requirement had been satisfied in Moody because the debtors had "initiated an adversary proceeding in the bankruptcy court for the purpose of arguing the merits of the assumption of the contract." The Court found that the debtor in Counties had "t[aken] no comparable action." Counties, 855 F.2d at 1061.

The Northern District of New York applied similar reasoning in Aetna. There, the court held that a health insurance contract was not executory at the time the debtor moved to assume it because it had expired by its own terms prior to the motion due to the debtor's failure to make due premium payments. 45 B.R. at 347. The court rejected the argument that the debtor had automatically assumed the insurance policy by not rejecting it, and, as in Counties, explained that the debtor "had to take affirmative action to prevent the policy from terminating under its own terms." Id. at 349 (quoting In re Anne Cara Oli Co., 32 B.R. 643 (Bankr. D. Mass. 1983)). The Court found that "neither the debtor nor the trustee took any action to assume the insurance

policy," and therefore it "would terminate under its own terms at the end of the grace period [on November 30, 1983]." Id.  Thereafter, "no contract existed . . . for the Bankruptcy Court to assume." Id.  Critically, while the court found it relevant that the debtor had submitted a plan, it held that the mere submission of a plan did not constitute the necessary "affirmative act" because,

> [T]he plan in the present case only lists Aetna as an unsecured creditor for the September premium.  Debtor's estimated monthly expenses include money for health insurance, but Aetna is not designated as the recipient. . . Moreover, no provision is made for payment of debtor's December premium.

Id.  The insufficiency identified by the court was not, as Transamerica incorrectly argues, that the plan had not been confirmed by the court, (Trans.' Supp. Br. at 12), but rather that the debtor had not specifically designated Aetna, the insurer, in the plan as a recipient of due funds.

The Court is mindful of the many parallels between the instant case, Counties and Aetna. However, these parallels make all the more conspicuous the way in which the instant case is distinguishable from them: here, Debtors undeniably took the "affirmative act" to assume the Insurance Contract that was missing in both Counties and Aetna.  Specifically, Debtors filed the Plan 14 days after the Chapter 13 Petition Date, on April 21, 2015, and "[t]he Plan sought to assume the Insurance Contract and cure any arrearage." (Stip. ¶ 18).  Accordingly, the very conditions that lead those courts to reason that a post-petition evaluation of the nature of the insurance policies was warranted were not present in the instant case.  In fact, the fatal flaw identified in Aetna—failure to specifically designate the insurer as a recipient of funds in a submitted plan—was cured by Debtors in this case, in that both Transamerica and the Insurance Contract are specifically identified in Debtors' Plan.  (See Bankr. Dkt. No. 11 ¶ 4).

Because Debtors took the requisite "affirmative act" to assume the Insurance Contract after it expired, the fact that the Insurance Contract expired by its terms after the Chapter 13

13

Petition Date alone does not warrant departing from the typical time for testing its executoriness. Accordingly, the Bankruptcy Court was correct to determine the executoriness of the Insurance Contract as of the Chapter 13 Petition Date, and, as explained more fully above, to find that the Insurance Contract was executory on that day.

## VI. Conclusion

Because the Insurance Contract was executory at the time of Debtors' Motion to Assign, the Court finds that the Bankruptcy Court did not err in granting Debtors' Motion to Assign, pursuant to Section 365. Accordingly, Debtors' motion to dismiss Transamerica's Appeal will be **GRANTED.**

An appropriate Order follows.

O:\Jessica.2016\16-cv-4505 In re Ernest H. Freise\Memo Re Granting Motion to Dismiss Appeal.docx